Good morning your honors and may it please the court. My name is Mitch Turbenson on behalf of appellant Clarence McNair. I ask to please reserve three minutes for rebuttal. Okay the clock counts down we'll try to help but keep track of your time. Perfect. This court should reverse the district court's grant of summary judgment determining that Mr. McNair did not exhaust administrative remedies because its decision misapplied the summary judgment standard and ignored this court's binding precedent on the level of specificity required for inmate grievances. More specifically the court should reverse for three reasons. First the district court improperly required Mr. McNair's grievance to include all legally significant facts that would be necessary to survive a screening order or a rule 12b6 motion and drew inferences in Mr. Kersten's favor when it rejected the sufficiency of the grievance that specifically mentioned Mr. Kersten's harassment and retaliation. Second the district court improperly weighed evidence when it determined that Mr. McNair's declaration could not establish that he was subjectively fearful of Mr. Kersten's threatened retaliation if he included inflammatory allegations such as the fact that Mr. Kersten called him a snitch in the grievance. Now that last point do we need to reach that question if we hold that he successfully exhausted? No that only comes up Judge Fletcher if the court determines that as a matter of law he did not exhaust his administrative remedies. I see that would be an excuse for having failed to exhaust. Correct. Okay I get it. And third the district court abused its discretion in sua sponte denying leave to amend and dismissing with prejudice which reflected its misapprehension that a complaint cannot include allegations beyond those provided in the grievance. So the first issue and a common thread throughout the district court's errors is the standard that the district Griffin v. Arpaio Mr. Kersten as the movement had the burden to establish there was no dispute of material facts as to whether the grievance placed prison officials on notice or was capable putting prison officials on notice of the inflammatory facts. As recognized in Reyes v. Smith the inquiry goes beyond the language of the grievance and often requires an examination of evidence reflecting what prison officials actually knew or could have known. Does Griffin apply here because the regs here 740.05 states that inmates must submit quote all documentation and factual allegations available. So doesn't that set its own standard that you have to provide all of the facts? The district court below determined that that did not apply and that the sufficiency of the evidence was under the strong standard articulated by Griffin v. Arpaio. And arguably I think that those standards are somewhat similar what was in the regulation what was here in the strong standard. While an investigation occurred here Mr. Kersten proffered no evidence relating to the prison's investigation and instead simply pointed to the ambiguous language and the grievance. There's plenty of evidence that could potentially have settled this issue including investigation notes from the inspector general who investigated this case surveillance video and even prison officials affidavits which were not included in the motion for summary judgment. But Mr. Kersten decided to rely solely on the in general nature of what the grievance described as Mr. Kersten's harassment and retaliation. Instead of drawing the inferences in Mr. McNair's favor however the court improperly adopted a higher specificity standard than articulated by this court. In Reyes the court stated that grievances are not meant to lay the groundwork for litigation and need only alert the prison to the nature of wrong for which redress is sought. So looking solely to the language of the grievance as the district court did and drawing inferences in Mr. McNair's favor as the district court failed to do Mr. Kersten simply did not proffer sufficient evidence to show as a matter of law prison officials were not on notice and could not have been placed on notice of the conduct described in the first amendment complaint and the court should reverse on this basis. As to the second basis for reversal and as Judge Fletcher noted this is only if the court determines that the district court was correct in holding as a matter of law administrative remedies were not exhausted. The second issue is that the district court rejected outright Mr. McNair's affidavit and holding as a matter of law Mr. McNair did not have a subjective fear of retaliation including more inflammatory facts of Mr. Kersten's conduct in the grievance. Under the McBride v. Lopez standard there's a subjective and objective prong. The subjective prong is the actual belief by the prisoner that prison officials would retaliate if Mr. McNair filed a grievance. Here the court only addressed the subjective prong and simply disregarded Mr. McNair's declaration because it viewed Mr. McNair's filing of a grievance without inflammatory facts as contradicting Mr. McNair's statement that he was afraid to file a grievance with the inflammatory facts. But as was the case of McBride as well as the persuasive unpublished Segley v. Busciccio case filing a grievance does not necessarily undermine a prisoner's subjective fear of retaliation. Moreover the court's rationale for disregarding evidence at the summary judgment stage that Mr. McNair basically was manufacturing a genuine dispute material fact as the district court pointed out does not allow a court to disregard admissible evidence unless there's some other doctrine such as the sham affidavit rule or some other doctrine that the district court didn't point to here. Do we know what type I couldn't tell from the record do you know what type of investigation the state conducted in response to the grievance? That I do not believe that's in the record all that we have is the conclusion of the investigation which I guess assumes that there was an investigation that occurred and but we yeah we don't know what the nature of that was or if there were reports produced from it if there were interviews taken or any of that. Third the district court abused its discretion in dismissing this action with prejudice despite Mr. Kirsten seeking dismissal without prejudice. In so doing the authority believing that Mr. McNair was limited to pleading the facts contained in his grievance and was time barred from submitting a second grievance regarding Mr. Kirsten's conduct on July 1st 2015. This is incorrect as a matter of law moreover the district court did not even consider the Fomen factors which this court has repeatedly said constitutes an abusive discretion. As one final note I'd like to address briefly Mr. Kirsten's argument in the answering brief that this court is not permitted to review the district court's application of the summary judgment standard because Mr. McNair did not file objections to the magistrate judge's report and recommendation. The court kind of dealt with this in the Albino case where there was a dispute over the ninth circuit should be reviewing for to reviewing standard would be de novo or clear error and as the en banc panel said in Albino because it's an application of a summary judgment standard not findings of fact in the normal sense the review was de novo. When there's de novo when the dispute is over the de novo application of law it's a factor approach and here Mr. Kirsten is advocating for a particularly harsh sanction that Mr. McNair who's proceeding pro se before the district court waived all objections to the legal errors in the magistrate judge's report and recommendation. Mr. Kirsten does not identify any other factors that including Mr. McNair's pro se status and even his objections which were styled following the district court's entry of judgment as a motion to alter or amend judgment militate against the harsh sanction. The motion to alter or amend judgment noted that there is a clear clearly a genuine dispute pursuant to the federal rules of civil procedure and as a matter of law. So unless there any other questions I urge the panel to reverse the district court's grant summary judgment and I'll reserve the remainder of my time for rebuttal. Thank you. Let me ask you with regard to the fear of retaliation the objective prong that you indicated was not addressed is that a factual inquiry or is that a legal determination? I think that the objective prong would be an issue of I guess that that typically has been addressed as a legal issue although I do think there are disputes of material fact here that might prevent a court from determining the legal. I guess it's a mixed question of law in fact in short and if the court were to you know consider the objective prong here I think it would find that the prong was met considering Mr. McNair's declaration detailed the threats of retaliation that were directly related to filing grievances and occurred immediately after Mr. McNair spoke to the inspector general about the separate grievance he filed against Mr. Kirsten. Okay any further questions from the bench at this time? Thank you very much for your argument and you reserve a fair amount of time. Let's hear from the other side. Good morning your honors. Thank you panel. May it please the court. This is Frank Todrick the second senior deputy attorney general for the state of Nevada and I'm here to represent officer Kirsten. Okay just wanted a note for the time to start running. We submit that the proper outcome of this case would be to affirm the below judgment and remand to the lower court without any further proceedings. The inmate grievance procedure is the primary mechanism to remedy the prison's complaint and Mr. McNair did indeed fully exhaust one of his grievances. To distill this case to its essence this panel is here to consider two queries from the district court judgment. First did McNair properly grieve the matters prior to filing his lawsuit so as to if he did not was McNair prevented by a fear of retaliation thus undertaking the McFry test. As stated in the brief congress enacted the prison litigation reform act the PLRA 96 to slow the cascade of inmate cases. The centerpiece and likely the most frequently litigated aspect of the PLRA is the so-called exhaustion requirement. PLRA made a mandatory requirement that a prisoner administrative remedies prior to filing suit in federal court. This court has repeatedly stated that the exhaustion requirement is mandatory firm and essential. However the most beneficial and congress's hope for intent of the exhaustion requirement is to put the prison on notice of the problem and to allow the prison to attempt to remedy the situation prior to a federal litigation or even a ninth circuit appeal. Prison solutions for prison problems and in that regard the ninth circuit has set forth a specificity requirement so that the prison is on notice of the problem and can attempt to resolve. How have we articulated that specificity requirement as you call it? The baseline for that is whether I'd say the baseline under Griffin is whether the prison is on notice of the nexus of the problem. So it doesn't have to they don't have to put forth the all the facts and legal arguments but just the you know. So why didn't this agreement satisfy that? Well Judge Fletcher there's two reasons why. The grievance 2006-30 that actually went through alleged a wholly different act from those that were put forth in the first amended complaint. The grievance that was exhausted alleged the person left his post, ran over to Mr. McNair, berated him for leaving the yard at the wrong time. Curiously enough the first amended complaint I mean pardon me scratch that. Curiously enough the original complaint which was initially screened out had the exact allegations set forth in the in the exhausted grievance. This was initially screened out by the district court for failure to state a claim. Only upon for amending the complaint into the first amended complaint did Mr. McNair now include the allegations that included a laying of hands on him, threatening him, pushing him, calling him a handicapped homo, a snitch, and a rat in front of the other front of other officers and inmates. The first amended complaint says an entirely different tenor. Putting hands on somebody, putting them in danger, that turns into a failure to protect a possible criminal felony. It's an entirely different investigation now that the person would have to go into. I understand the sequence which I think you've described accurately and I'm going to assume that the first complaint was properly screened. May or may not but I will assume it was properly screened because there wasn't enough to satisfy 12b6 even for a pro se. But I don't think you're arguing that the exhaustion requirement of particularity is the same as the particularity requirement under 12b6 or are you? No I'm not. A tolerable claim does not make a cognizable constitutional question. So we'll start there then. So 12b6, I'll call it the Iqbal requirement, is not the requirement for exhaustion. The requirement for exhaustion stated in general terms is enough to alert the prison that there's a problem and that they should investigate it. And why didn't this alert the prison that there was a problem because the prison guard leaves his post, I think the word was bolted from his post, berates the prisoner and so on. I mean if they'd done an inquiry, assuming that the allegations in the first amendment complaint are true, they would have heard exactly what's now in the first amendment complaint. Yes your honor and based upon the record there, while it's not fully developed as to the contents of the investigator general report, as my colleague noted, the conclusion of the inspector general report was included, which found that there was no wrongdoing. So while we don't have the actual investigation record, we have the conclusion. So we don't know what they discovered, we don't know really the extent of their investigation, so it's possible that all they knew or at least thought they knew with respect to what had happened was that the guard had left his post and said a few words and that was it. Right? Yes your honor. And we really don't know what kind of an investigation was made upon which the conclusion was made that there was no wrongdoing. Correct your honor. So okay sorry it's a little difficult on the zoom sometime to get the cues. I want to stick to this. The regulation 740.03 says the state should provide a quote-unquote comprehensive explanation of a denial of a grievance claim. And looking at the record, you know, the denial is very sparse. There's really not much of an explanation. I mean didn't that potentially prevent Mr. McNair from exhausting his administrative remedies if they actually provide a little bit more detail? Perhaps it could have remedied that. Well Judge Lee, I would put forth that that was what the extra levels of appeal are for. The initial investigation is generally undertaken by a caseworker, someone kind of low level, and then Mr. McNair has the opportunity to rebut those arguments, present anything else he wants to in his two levels of appeal. And indeed he did complete this grievance to both levels. So he did have the opportunity to provide further information that he thought was necessary for the warden and associate wardens that would later be reviewing this grievance. It's a little bit difficult when all you get is one sentence saying deny. You don't know what the details of their surprise they're supposed to do under the regulation, you know, could have avoided this. Yes, and I would agree. I mean an ideal grievance response cites an administrative regulation, goes a bit more into detail, but this is what we have in the record. I would submit that it was probably a bit limited because of the referral to the inspector general office and the inspector general's generally, because it's an independent wing of the NDOC, their officers, staff members don't respond to the grievances. So if I could venture, say the word assumption, if I could venture a reasoning as to why they were more limited than a normal one, it would be because of the staff referral. Whenever a case invokes staff misconduct, it automatically goes to the inspector general. Can you address the question I asked Mr. Turdenson? Does our court's Griffin ruling apply here in light of language in 740.05 that says an inmate must provide all documentation and factual allegations available? Yes, and I would submit that either by either the putting the prison on notice of the problem. It didn't appear that he had any other documentation to give in support. It didn't appear that McNair, rather, had any other documentation to give in support of his claims. So essentially what we have is just the sufficiency of the grievance itself and McNair's words for the prison to know what it should investigate and what problem might need to be remedied. So in other words, it could have used the Griffin standard, even the strong standard, as long as the basis requirements that the prison is aware of what the problem is. We don't need all the legal arguments, all the facts for litigation, but just the baseline here. And I would say that the baseline here did not consider the more inflammatory remarks that McNair's state occurred. And so as to the more inflammatory statements, I would like to concentrate on where Magistrate Judge Cobb in the report and recommendation found that Mr. McNair's affidavit in response to the summary judgment was not sufficient to create a question of fact. And this was actually a very fact-intensive review of the matter. After summary judgment presented the argument that this did not meet the AR 740 Griffin notice requirements for the first amended complaint, Mr. McNair and his opposition declared that Karestan had indeed threatened him and that he felt a fear of retaliation if he had actually put these more inflammatory facts into his grievance. However, looking at the other, there's two points that counter that. First, Mr. McNair did not appear to just make these facts out of thin air. He, in another grievance, made the exact same allegations against a different officer, Officer Atwood, who had been dismissed via the screening order. And indeed, McNair filed two separate lawsuits against Atwood alleging the exact same allegations. One of them was dismissed on summary judgment and the other one settled out. But based upon the magistrate reviewing the other declaration that had the exact same facts against Atwood and also noting that if there was a fear of retaliation, it was overcome by the fact that Mr. McNair filed three grievances within 10 days of the July 2014 interaction with Karestan. Further, the other declaration that was dismissed by another inmate who described what he stated was a similar incident by Karestan in October of 2016, that should also not have been persuasive because the other inmate's declaration would say nothing of the state of mind for McNair, which is the objective requirement that the court must consider in the second prong of the McBride fear of retaliation test. So, with my time running down, I'd like to just have one other point about the Foman factors and the query of whether it's improper to dismiss with prejudice versus without prejudice. Foman is a 1967 unenforceable contract action in which the district court erred by failing to permit a petitioner to amend his complaint to include a quantum error in that case. However, the error that the district court undertook was it did not consider a Rule 15A pleading amendment standard such as bad faith, futility, etc. By not considering these factors at all, the court erred. Foman did not set forth a factor test that every district court must undertake if they're going to consider whether to deny with prejudice. In that regard, the factors that one would consider if you had a so-called test would be the Rule 15A factors for permitting pleadings. In this case, while Judge Cobb did not, in the report and recommendation, did not explicitly take a full 15A analysis of all the factors, he did consider the one most important, and he did not use the word futility directly, but he noted that this would not be able to be cured because this is based upon deficiencies in the grievance. To that note, an inmate has six months from the cause of action to submit his grievance. Being that this dispositive motion was occurring three and a half, almost four, about three and a half years after the interaction with Kirsten, it would be impossible for Mr. McNair to cure these defects. This is a jurisdictional problem about what he had to grieve in order to get to the federal court. So to that end, amendment would have been futile because he's still married to the words and the grievance. And with that, if there's any further questions, I see my time is about up. Okay, thank you very much. And we'll hear the rebuttal, and there has been some time saved for that. Thank you very much. Thank you, Your Honor. I just had a few points that I wanted to touch upon. As Judge Lee noted, this case is in a weird procedural posture versus many of the other cases the Ninth Circuit has actually dealt with. And Judge Lee was addressing this on the regulation front as to what the Inspector General was necessarily required to provide here. And in many of the other cases, such as Reyes, such as Griffin, you actually had a lot more fulsome record. You had the prison providing specifics as to what they investigated. They provided specifics as to who they investigated, how they investigated, what allegations they were looking at. Here we have none of that. And it presumably was all available to the movant here, Mr. Kirsten, and yet none of that was provided. No affidavits, no surveillance videos. And so taking the summary judgment standard, all we have is an ambiguous complaint and inferences having to be drawn in favor of the non-movant. And really, that's the easiest way to settle this case or this appeal. The other points I just wanted to touch upon as far as the McBride issue with I think what my colleague kind of recounted was what the magistrate was doing is weighing evidence, weighing, you know, as to subjective belief, I'm not going to credit this affidavit because look at everything over here. And to me, that's just not sufficient as a matter of law. We have in the unpublished, but persuasive case from 2017, Silevi-Lusitio, the court there noted that the prisoner continued to file, quote, a stream of complaints and kites, and yet still credited the subjective prong of that test. I think it was also similar in McBride itself, which dealt with a late filed complaint, which the court still credited the subjective prong, even though the complaint was filed months, two months after, and yet that still didn't necessarily negate the subjective prong as to whether the prisoner was in fear of submitting a complaint, a grievance. And finally, just on the point of the Fomen factors and the futility that my colleague brought up, I do think that the futility argument brings in the misapprehension of the Ninth Circuit authority here in presuming that Mr. McNair would be limited to the facts in the grievance. There's no case on the Ninth Circuit that holds that, and it's actually to the contrary. So if there aren't any more questions, I urge the panel to reverse the district court's grant of summary judgment for failure to follow this court's precedent on the specificity of grievances, the inability to include all inflammatory allegations in the grievance due to fear of retaliation and the dismissal of prejudice. Thank you. Okay, thank you. Before you sit down, figuratively speaking, sit down, are you doing this case as an appointment from us? Are you doing this pro bono in some other fashion? How are you appointed to this case? An appointment from the Ninth Circuit. Yes, that's what I thought. And so, as is customary, we thank you and people who do this for us. It's very useful to us. You've done a lovely job. I would like to say to the attorney for the state, you've done a very nice job too, but you're getting paid for it. But we appreciate the good work on both sides. And my thanking you, of course, has no bearing on the actual merits of the case. But thank you for your nice work. And thank the lawyer for the state as well. Thank you. Thank you, your honor. Case is now submitted.
judges: W.fletcher, Lee, Settle